IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                    *

WILLIAM SNYDER, et ux.,             *

        Plaintiffs,                 *

v.                                  *        CIVIL ACTION NO: WDQ-02-415

CHESTER COUNTY MUTUAL               *
INSURANCE CO., et al.,
                                    *
        Defendants.
*     *     *     *     *     *     *     *     *     *     *     *     *
                                                                        *


<u>MEMORANDUM OPINION</u>


        In this diversity case, William and Mary Lou Snyder ("the

Snyders") of Maryland have sued Chester County Mutual

Insurance Company of Pennsylvania and Cumberland Insurance

Company of New Jersey (collectively "Cumberland") for breach

of contract, bad faith, tortious breach of contract, and

constructive fraud arising from the denial of their

homeowner's insurance claim.  Cumberland has moved for summary

judgment.  With respect to the breach of contract claim,

Cumberland argues that the Snyders materially breached their

contract by failing to provide requested documents.

Cumberland argues that the remaining claims are not recognized

under Maryland law.  For the following reasons, the motion

will be denied as to the breach of contract claim and granted

as to the remaining claims.

                                  -1-

BACKGROUND

The Snyders purchased homeowner's insurance from
Cumberland, which covered theft losses.  Memorandum of Law in
Support of Defendants' Motion for Summary Judgment
("Memorandum") at 2; Memorandum in Support of Opposition to
Motion for Summary Judgment ("Opposition") at 3. [1]  On April
8, 2001, the Snyders' home was burglarized while they were on
vacation.  Opposition at 3.  After the theft, the Snyders
compiled a "quick list" of missing items that could be quickly
resold; the list totaled $15,206.88. Opposition at 4;
Plaintiffs Exhibit ("P.E.") B, at 39.

In late April 2001, Mrs. Snyder received notice that
premium payments were late.  P.E. B, at 58-59.  A Cumberland
representative assured her the policy would not be canceled if
the payment was promptly submitted.  *Id.*  In early May,
Cumberland canceled the policy for nonpayment.  *Id.*  After

---

[1]  Although it did not move for summary judgment on that basis,
Cumberland asserts in a footnote that it is not liable to the Snyders under
the insurance policy, which only names Chester County Mutual.  Memorandum at
2, footnote 2; Defendant's Exhibit ("D.E.") 1.  Chester County Mutual merged
into Cumberland Insurance Group on October 1, 2000, and no longer exists.
P.E. G, page 4-5.  When two entities merge, the surviving entity assumes the
other's liabilities.  *Baltimore Luggage Co. v. Holtzman,* 80 Md. App. 282, 290
(1989), *cert. denied* 318 Md. 323 (1990).  When Cumberland denied the Snyders'
claim it acknowledged: "Cumberland Mutual Insurance Company formerly the
Chester County Mutual Insurance company is denying any liability to you . . ."
D.E. 5.

-2-

receiving the cancellation, Mrs. Snyder called Cumberland and
spoke to Vice President of Claims Frank Hoover and others who
told her the policy would remain canceled. *Id.* at 59-60.
After Mrs. Snyder threatened to call the Maryland Insurance
Commissioner, the Vice President of Underwriting told her the
policy would be reinstated without any lapse in coverage.
*Id.* at 61.

On July 31, 2001, the Snyders submitted an inventory that
claimed a loss of $95,820.05. P.E. F, at 53; Opposition at 5,
P.E. J, at 1. [2] Although receipts were submitted, Mr. Scott
Johnson testified, the claims adjuster, testified a "good
portion" of the claim's collaboration consisted of photocopies
of catalog pages. P.E. F, at 73-74.

In early August, Mrs. Snyder called Mr. Hoover about the
claim. P.E. B, at 62. He cordially indicated he would have
some questions about the claim. P.E. B, at 62. After a few
weeks, Mrs. Snyder called him again. *Id.* She testified he
was "nasty" during this second conversation in which he
indicated that the claim was "voluminous" and had been
referred to George Reede, Esquire, Cumberland's attorney. *Id.*
at 63. Mrs. Snyder told him that his suspicions made her feel

---

[2] Cumberland contends the claim was closer to $103,000. Memorandum at
2; P.E. G, page 46.

-3-

"like a rape victim." *Id.* at 64.  After that call, Mrs. Snyder left an "irate" message on Mr. Reede's answering machine.  *Id.* at 66.  When Reede called her, she restated the "rape victim" analogy.  *Id.* at 66.

Mrs. Snyder also called Captain of Detectives Bob Irwin and told him Mr. Hoover had accused her of burglarizing her home.  *Id.* at 67.  Finally, she called insurance adjuster Scott Johnson, and told him that Mr. Hoover had "lied to her" and had accused her of burglary.  *Id.* at 70.

Mrs. Snyder testified that then Mr. Hoover called her, "yelling," and said: "Who do you think you are? You tell me - - you have told people I'm a liar.  You said that I accused you of this burglary, I've never accused you of this burglary. I'm no liar." *Id.* at 70.  The tone of the conversation softened however and Mr. Hoover was "very personable" at its conclusion.  *Id.* at 71.

On September 6, 2001, the Snyders met with Mr. Hoover and Mr. Johnson to discuss their claim.  Opposition at 7.  Mrs. Snyder indicated Mr. Hoover was sarcastic at times during the meeting and told the Snyders that if he had his attorney review the inventory it would be "20 times worse."  P.E. B, at 77, 78-79.  During this meeting, Mr. Snyder told him he had considered filing bankruptcy in 1999.  Opposition at 7, P.E.

-4-

C, at 69-70.

On September 28, 2001, Cumberland requested certain financial documents. Opposition at 7-8; Defendant's Exhibit ("D.E.") 5, at 1. [3] In the request, Cumberland conceded that the theft had occurred, but questioned whether the Snyders had inflated their claim. D.E. 5, at 1. The Snyders never produced the requested documents. P.E. C, at 23.

On January 4, 2002, the Snyders sued Cumberland for anticipatory breach of contract and torts arising from that breach. On January 30, 2002, Cumberland notified the Snyders that it was denying their claim for failure to produce the requested documents. Opposition at 8; D.E. 5, at 9-10. [4] On February 8, 2002, Cumberland removed the case from the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1332.

On February 26, 2002, Cumberland filed a Motion for Summary Judgment; it was denied as premature on August 12, 2002.

---

[3] Cumberland requested: (1) Individual Income Tax Returns for 1999-2000, with attached schedules; (2) bank account statements from January 1, 1999 through April 30, 2001; (3) checking account registers from January 1, 1999 though the date of the theft; (4) canceled checks from January 1, 2000 through April 30, 2001; and (5) the Snyder's "petition for bankruptcy, the filing of which you have indicated is imminent." D.E. 5, at 1-2.

[4] Cumberland has proceeded on the basis that the claim is for breach of contract. Opposition at 20; Memorandum at 11; Defendant's Reply Memorandum at 6 ("Here Plaintiffs have alleged nothing more than a breach of an insurance contract . . .").

-5-

On January 17, 2003, Cumberland filed the instant motion for summary judgment.  The Snyders opposed this motion on February 4, 2003.  After Chester County and Cumberland replied on February 13, 2003, the Snyders requested leave to file a surreply.

Discussion

As a preliminary matter, the Court will grant the Snyders' unopposed request to file a surreply.  Local Rule 105.2 (D.Md.).  The issues have been fully briefed by the parties, and no hearing is necessary.  Local Rule 105.6 (D. Md.).

I.  Summary Judgment Standard

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment.  *See Kitchen v. Upshaw,* 286 F.3d 179, 182 (4th Cir. 2002), *citing* Fed.R.Civ.P. 56(c).  The moving party's initial burden depends on whether it would bear the burden of proof at trial.  If it would not, its initial burden is met by "pointing out" that the non-moving party has not made a sufficient showing on an essential element of its case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).  If the moving party would bear the burden of proof at

trial, it satisfies its initial burden by producing evidence upon which a reasonable jury could return a favorable verdict. *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 614 n. 10 (4th Cir. 1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Celotex,* 477 U.S. at 323-25, *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002), *citing Anderson,* 477 U.S. at 255. [5]   <u>II.   Breach of Contract</u>

This contract dispute is governed by Maryland law.  *See Roe v. Doe,* 28 F.3d 404, 407 (4th Cir. 1994) (law of forum state controls diversity cases).

Cumberland argues it is entitled to summary judgment because the Snyders' failure to produce the requested financial documents materially breached the insurance contract and relieved it of its payment obligation.  Memorandum at 5-6.

_____

[5] The opponent's burden cannot be met with conclusory or speculative allegations, or a "mere scintilla" of evidence.  *See Thompson,* 312 F.3d at 649, *citing Phillips v. CSX Transp., Inc.,* 190 F.3d 285, 287 (4th Cir. 1999). However, all justifiable inferences will be drawn in favor of the non-moving party.  *Phillips,* 190 F.3d at 287-88, *citing Anderson,* 477 U.S. at 255.

It relies on the contract's cooperation clause that requires the policy holder to "[p]rovide [the insurer] with records and documents [the insurer] request[s] . . . ."  D.E. 6.

The Snyders argue that they either substantially complied, or completely complied, with the cooperation clause because the information request was unreasonable.  Opposition at page 13.  They also assert that Cumberland cannot discharge its contractual obligations because of the omission unless it demonstrates actual prejudice.  *Id.* at 14.

A.  Reasonableness of the Information Request

1.  Substantial Compliance Standard

Insurance companies frequently assert noncompliance with contractual duties as grounds to disclaim liability.  *See Allstate Insurance Company v. State Farm Mutual Automobile Insurance Company, et al.,* 363 Md. 106, 118-19 (2001).  Provisions requiring the submission of information upon request are categorized as cooperation clauses.  *Id.* at 121.  A cooperation clause may be either an express condition or a covenant.  *Hartford Fire Insurance Company v. Himelfarb,* 355 Md. 671, 680 (1999).  Strict compliance with an express condition is required to maintain the insurer's payment obligation.  *Id.* at 681.  Mere substantial compliance with a covenant is sufficient.  *Id.*

Cumberland's cooperation clause is a covenant because the disclosure obligation is not stated as an express condition precedent and forfeiture is not stated as a consequence of noncompliance. *Compare* D.E. 6 *with Himelfarb,* 355 Md. at 679-81. Therefore, if the Snyders substantially complied with the cooperation clause, Cumberland's payment obligation is not extinguished. *Himelfarb,* 355 Md. at 681. [6]

Substantial compliance exists when the insured: (1) supplies *reasonably requested* information to a reasonable extent; and (2) undertakes to submit the balance when it is reasonably possible. *Himelfarb,* 355 Md. at 690-91 [emphasis added]. [7] The Snyders did not provide Cumberland with the information it requested. P.E. B, at 11 (Mrs. Snyder's

---

[6]    In *Himelfarb*, the Maryland Court of Appeals noted that construing a contract term as covenant, rather than as an express condition precedent, is preferred because forfeiture is disfavored. *Himelfarb,* 355 Md. at 679-81.

[7]    This standard was announced in *Himelfarb*, a case involving the failure to submit a proper sworn proof of loss. *Id.* at 673. Proofs of loss allow the insurer "to ascertain the nature, extent, and character" of the claim. *GEICO v. Harvey,* 278 Md. 548, 553 (1976), *citing Empire State Ins. Co. v. Guerriero,* 193 Md. 506 (1949). The proof of loss allows the insurer to plan its course of action, "ranging from full settlement to absolute repudiation of liability." *Id. citing Fire Ins. Co. v. Merrick,* 171 Md. 476, 489 (1937) (property loss case involving failure to provide proof of loss amidst fraud allegations).
    *Himelfarb* recognized that proof of loss and cooperation clause jurisprudence is related and cited a cooperation clause breach in a proof of loss dispute. *Himelfarb,* 355 Md. at 689, *quoting Mutual Fire Insurance Co. v. Pickett,* 117 Md. 638, 643-44 (1912). *Mutual Fire Insurance Co. v. Pickett* recognized that cooperation clauses provide the means to verify the information in proof of loss claims. *Id.*

testimony); P.E. C, at 22-23 (Mr. Snyder's testimony).
Although Mrs. Snyder testified that she did not keep records
such as bank statements, tax returns, and bills, there is no
evidence that she could not have - - through reasonable
efforts - - obtained duplicates. *Id.* at 11, 13, 14, 18, 28-
31. [8] In fact, when asked what happened to the checking
account registers, Mrs. Snyder testified that after the
burglary she "shredded a lot of stuff because everything was
so out of order that we didn't bother." P.E. B, at 16-17. If
Cumberland's request was reasonable, the Snyders have not
substantially complied with the cooperation clause. *See
Himelfarb,* 355 Md. at 690-91.

The Snyders argue that the information request was
unreasonable because Cumberland's suspicion of fraud was
unreasonable. *See* Opposition at 7-8, 11, 18. Financial
documents are relevant and reasonably requested when an
insurer suspects fraud. *See Powell v. United States Fidelity
& Guaranty Co.,* 855 F.Supp. 858, 860 (E.D. Va. 1994), *aff'd*,
88 F.3d 271 (4th Cir. 1996), *and cases cited therein.* The
insured's failure to provide such information has been a basis

---

[8] Mr. Johnson testified that one may obtain duplicate credit card bills
and either duplicate canceled checks or bank statements by requesting them.
P.E. F, at 82.

for summary judgment for the insurer because no jury could reasonably find substantial compliance with the policy. *See Powell,* 855 F.Supp. at 861-62.

Requests for documents have been held reasonable in circumstances in which fraud was uncertain. *See Templin v. Grange Mut. Casualty Co.,* 81 Ohio App.3d 572, 574, 577 (1992) (when insurer's investigation indicating arson conflicted with fire and police department investigation indicating faulty wiring, financial information of insured was material). Document requests are reasonable if there is a mere "possibility" of fraud. *See Wood v. Allstate Ins. Co.,* 21 F.3d 741, 747 (7th Cir. 1994), *citing Stover v. Aetna Casualty & Surety Co.,* 658 F.Supp. 156, 160 (S.D. W. Va. 1987); *accord Tran v. State Farm Fire & Cas. Co.,* 961 P.2d 358, 364 (Wash. 1998); *Happy Hank Auction Co. v. American Eagle Fire Insurance Company, et al.,* 286 A.D. 505, 509 (N.Y. App. Div. 1955).

In Maryland, insurers must investigate claims in good faith. *Port East Transfer, Inc. et al. v. Liberty Mutual Ins. Co.,* 330 Md. 376, 386 (1993); *see also Berkshire Life Ins. Co. v. Maryland Insurance Administration, et al.,* 142 Md. App. 628, 660 (2002). To request financial documents, an insurer need only believe in good faith that there is a possibility of

-11-

fraud.  *See Id.; Wood,* 21 F.3d 747.

Cumberland's theory of fraud is that the Snyders inflated their otherwise legitimate claim.  Memorandum at 3.  Mr. Hoover had the ultimate authority to pay or deny the Snyders' claim.  P.E. G, page 11.  He testified that he suspected fraud because:  (1) the Snyders increased the claim amount from $15,000 to $103,000; (2) the final claim amount was very close to the policy limit; (3) the highest theft loss he had seen before the Snyders' claim was from $30,000 to $40,000; (4) the police told him they did not tell the Snyders to compile the $15,000 quick list; (5) the Snyders mentioned bankruptcy; and (6) Mrs. Snyder indicated she often gambled.  P.E. G, at 46, 48, 59-60, 62.  The insurance adjuster indicated that a "good portion" of the Snyders' supporting documentation consisted of "photocopies of catalog pages and things like that."  P.E. F, at 74.  This evidence supports a good faith belief in the possibility of fraud.

At trial, the Snyders would bear the burden of establishing that Mr. Hoover's bad faith excused their noncompliance with the cooperation clause.  *See Port East Transfer, Inc.,* 330 Md. at 386.  The Snyders argue, without more, that Cumberland could not have reasonably suspected them of burglarizing their home.  Opposition at 9-10.  The Snyders

-12-

have not produced evidence upon which a reasonable jury could find that Cumberland acted in bad faith.

There is no indication that Mr. Hoover ignored information that substantiated the Snyders' claim. Although the Snyders have produced evidence that Mr. Hoover became angry with them on occasion, that anger does not vitiate the evidence of possible fraud. [9]  Therefore, the Snyders have not produced evidence indicating a bad faith belief in the possibility of fraud.


### 2.  Actual Compliance with the Contract

The Snyders argue that the contract itself imposed an additional requirement that Cumberland's information requests be reasonable.  Opposition at 15.  The Snyders have not argued that this reasonableness requirement is more stringent than that already imposed by Maryland law.  Therefore, the Snyders have not shown that Cumberland's requests were unreasonable under the contract language.

### B.  Actual Prejudice in Property Loss Claims

### 1.  Common Law and Statutory History

---

[9]  The Snyders assert that the policy cancellation incidents in April and May led Mr. Hoover to retaliate against them.  Opposition at 21. There is, however, no evidence that Mr. Hoover became angry with the Snyders until after he became suspicious of the claim in mid-August.

In 1963, the Maryland Court of Appeals held that an insurer could disclaim coverage based on an insured's failure to comply with a notice provision without showing prejudice. *Watson v. U.S.F.&G.,* 231 Md. 266, 272 (1963).[10]

In 1964, the Maryland General Assembly responded by enacting what is now MD. CODE ANN., INS. § 19-110 (2002). *Allstate Ins. Co.,* 363 Md. at 122. The statute required insurers to prove prejudice by a preponderance of the evidence before disclaiming coverage based on the breach of a liability policy's notice or cooperation clause. *Id.; see also* MD. CODE ANN., INS. § 19-110 (2002).

2.  Application of the Prejudice Standard to Property Loss Claims

Section 19-110 permits an insurer to disclaim coverage on a "liability policy" by demonstrating prejudice. MD. CODE ANN., INS. § 19-110 (2002). The Snyders' reliance on § 19-110, however, is misplaced because § 19-110 does not apply to property loss policies. *Id.*

By contrast, MD. CODE ANN., INS. § 19-111 (2002) ("Limitation on preventing recovery for property loss") is triggered by the insured's failure to provide the required

_____

[10]  Notice provisions require that an insured notify the insurer of an accident or claim. *See e.g. Watson,* 231 Md. at 272-73.

notice or proof of loss. *See Himelfarb,* 355 Md. at 685. The insurer may disclaim coverage without demonstrating prejudice. *Id.*

However, § 19-111 does not permit insurers to disclaim coverage for noncompliance with a cooperation clause. MD. CODE ANN., INS. § 19-111 (2002). The Snyders are correct in contending that a showing of actual prejudice is required for Cumberland to avoid its payment obligation. Surreply at 7.

In 1960, the Maryland Court of Appeals imposed a heavy burden on insurers seeking to avoid payment because of an insured's lack of cooperation: "to relieve an insurer of liability on the ground of a lack of co-operation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in effect." *Union Assurance Society Limited, etc. v. Garver,* 223 Md. 412, 416 (1960), *quoting Indemnity Ins. Co.,* 197 Md. at 164.

Maryland: (1) disfavors the forfeiture of coverage; and (2) reads cooperation clauses to effectuate their purpose - - the prevention of prejudice to the insurer. *Himelfarb,* 355 Md. at 682 (the law does not favor forfeitures), *citing United States Fire Ins. Co. v. Merrick,* 171 Md. 476, 490 (1937); *Allstate Insurance Company,* 363 Md. at 121, *explaining Fid. &*

-15-

*Cas. Co. v. McConnaughy,* 228 Md. 1, 13 (1962)(cooperation clauses should be construed to effectuate their purpose - - preventing prejudice to the insurer); *St. Paul Fire and Marine Insurance Company v. House, et al.,* 315 Md. 328, 356-57 (1989)(Murphy, C.J., dissenting)(purpose of prejudice requirement is to avoid unjust forfeitures and to restrict effect of provisions to their intended purpose: preventing prejudice to the insurer).

> ### 3. Cumberland's Evidence of Prejudice.

The burden of proving prejudice is on Cumberland. *See Allstate Insurance Company,* 363 Md. at 122. Cumberland has not offered any evidence of prejudice, relying instead on the incorrect assertion that prejudice is irrelevant in property loss cases. Reply at 1-2. Summary judgment on the breach of contract claim must be denied because Cumberland has not provided evidence of prejudice.

## III. Tort Claims Arising from Breach of Contract

The Snyders allege that Mr. Hoover's actions were malicious and therefore support a tort action arising out of their contractual relationship. Opposition at 20. They claim that the denial of their property claim resulted from Hoover's ill will toward them. *Id.* at 19-20. They also allege that the "very nature of the theft loss claim" supports "its own

separate tort action" because of the deprivation of the means
to replace the stolen goods.  *Id.* at 23.

Contract remedies are exclusive for a failure to perform
under a contract. *Mesmer et al. v. M.A.I.F.,* 353 Md. 241, 258-
59 (1999), *citing Matyas v. Suburban Trust Co.,* 257 Md. 339,
342 (1970); *see also Jones,* 356 Md. at 657 (1999) (liability
insurer's erroneous denial of coverage gives rise only to a
breach of contract action).  An insured may not bring a bad
faith claim against an insurer for refusal to perform under a
contract.  *Yuen v. American Republic,* 786 F.Supp. 531, 533
(D.Md. 1992), *citing Johnson v. Federal Kemper Ins. Co., et
al.,* 74 Md. App. 243, 248 (1988), *cert. denied* 313 Md. 8
(1988)("Maryland does not recognize a specific tort action
against an insurer for bad faith failure to pay an insurance
claim.").

The Snyders have not identified any independent legal
duties applicable to Cumberland. [11]  Therefore, the Snyders may
not pursue tort claims against Cumberland.

---

[11] In Maryland, all insurance contracts contain an implied condition
that the insurer investigate claims in good faith.  *See Port East Transfer,*
330 Md. at 386.  Because but for the contract, the good faith condition would
not exist, the breach of the condition does not violate an independent duty.
*See Mesmer,* 353 Md. at 253.

-17-

### Conclusion

Because Cumberland has not offered any evidence of actual prejudice, summary judgment is inappropriate on the Snyder's breach of contract claim.  The Snyders' failure to identify a cognizable basis for their bad faith, tortious breach of contract, and constructive fraud claims requires the grant of summary judgment on those claims.


 May 22, 2003                                       /s/                  

Date                                    William D. Quarles, Jr.
                                  United States District Judge